1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11   DEWAYNE THOMPSON,

12        Petitioner,

13        v.

14   JEFF LYNCH,

15        Respondent.

Case No. 1:24-cv-00611-JLT-EPG-HC

FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS

16

17        Petitioner DeWayne Thompson is a state prisoner proceeding *pro se* with a petition for

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed herein, the

19   undersigned recommends denial of the petition for writ of habeas corpus.

20                                           **I.**

21                                      **BACKGROUND**

22        Petitioner currently is in the custody of the California Department of Corrections and

23   Rehabilitation ("CDCR"). According to the Rules Violation Report ("RVR"), on August 26,

24   2022, Sergeant J. Barrios was contacted by staff regarding a possible Prison Rape Elimination

25   Act ("PREA") violation claimed by Petitioner against custody staff. Barrios conducted an

26   interview with Petitioner who stated that custody staff approached Petitioner's cell to escort him

27   to the recreational yard, an unclothed body search was conducted, and custody staff reached

28   through the cell door food port and intentionally touched Petitioner's genital area. After the

1

1   interview, Barrios conducted a review of body worn cameras and the audio/video surveillance

2   system ("AVSS"), which refuted Petitioner's allegations because the video footage did not depict

3   custody staff reaching through the food port or touching Petitioner. Barrios determined that

4   Petitioner's allegations did not meet the criteria for PREA investigation and found that

5   disciplinary action was warranted. (ECF No. 8 at 25.[1]) Petitioner was charged with delaying a

6   peace officer in the performance of duties in RVR Log No. 7220117. A disciplinary hearing was

7   held on October 10, 2022. (ECF No. 8 at 27.) Petitioner was found guilty as charged and

8   assessed a ninety-day loss of credits. (Id. at 32, 33.)

9        Petitioner filed a petition for writ of habeas corpus in the Kings County Superior Court,

10  which denied the petition on March 3, 2023. (ECF No. 8 at 10–52.) On March 21, 2023,

11  Petitioner filed a habeas petition in the California Court of Appeal, Fifth Appellate District,

12  which summarily denied the petition on April 27, 2023. (Id. at 55–95.) On September 1, 2023,

13  Petitioner filed a habeas petition in the California Supreme Court, which summarily denied the

14  petition on October 25, 2023.[2] (Id. at 97–154.)

15       On May 22, 2024, Petitioner filed the instant federal petition for writ of habeas corpus,

16  raising the following claims for relief: (1) denial of access to exculpatory video evidence; (2)

17  denial of opportunity to question reporting employee at hearing; (3) finding of guilt without

18  playing video evidence at hearing; and (4) sufficiency of the evidence. (ECF No. 1 at 21–25.) On

19  July 12, 2024, Respondent filed an answer. (ECF No. 8.) Per the Court's order, the parties filed

20  supplemental briefs. (ECF Nos. 12, 15, 16.)

21                                              **II.**

22                                  **STANDARD OF REVIEW**

23       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

24  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

25  ---

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

26  [2] The Court notes that attached as Exhibit H to this petition was a copy of an August 16, 2023 order of the California Supreme Court denying a previous habeas petition with citation to People v. Duvall, 9 Cal.4th

27  464, 474 (1995) (a petition for writ of habeas corpus must include copies of reasonably available documentary evidence); and In re Dexter, 25 Cal.3d 921, 925–26 (1979) (a habeas corpus petition must

28  exhaust available administrative remedies). (ECF No. 8 at 150.)

1  enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th

2  Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is

3  therefore governed by its provisions.

4      Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred

5  unless a petitioner can show that the state court's adjudication of his claim:

6          (1) resulted in a decision that was contrary to, or involved an
           unreasonable application of, clearly established Federal law, as
7          determined by the Supreme Court of the United States; or

8          (2) resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in the
9          State court proceeding.

10 28 U.S.C. § 2254(d); Davis v. Ayala, 576 U.S. 257, 268–69 (2015); Harrington v. Richter, 562

11 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been

12 "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala,

13 576 U.S. at 269. However, if the state court did not reach the merits of the claim, the claim is

14 reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

15     In ascertaining what is "clearly established Federal law," this Court must look to the

16 "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the

17 relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court

18 decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that

19 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent

20 decisions"; otherwise, there is no clearly established Federal law for purposes of review under

21 AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742,

22 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125,

23 123 (2008)).

24     If the Court determines there is clearly established Federal law governing the issue, the

25 Court then must consider whether the state court's decision was "contrary to, or involved an

26 unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A

27 state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at

28 a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state

1 court decides a case differently than [the Supreme Court] has on a set of materially

2 indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an

3 unreasonable application of[] clearly established Federal law" if "there is no possibility

4 fairminded jurists could disagree that the state court's decision conflicts with [the Supreme

5 Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state

6 court's ruling on the claim being presented in federal court was so lacking in justification that

7 there was an error well understood and comprehended in existing law beyond any possibility for

8 fairminded disagreement." Id. at 103.

9    If the Court determines that the state court decision was "contrary to, or involved an

10 unreasonable application of, clearly established Federal law," and the error is not structural,

11 habeas relief is nonetheless unavailable unless it is established that the error "had substantial and

12 injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)

13 (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776

14 (1946)).

15    AEDPA requires considerable deference to the state courts. Generally, federal courts

16 "look through" unexplained decisions and review "the last related state-court decision that does

17 provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision

18 adopted the same reasoning." Wilson v. Sellers, 584 U.S. 122, 125 (2018). This presumption

19 may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on

20 different grounds than the lower state court's decision, such as alternative grounds for affirmance

21 that were briefed or argued to the state supreme court or obvious in the record it reviewed." Id.

22    "When a federal claim has been presented to a state court[,] the state court has denied

23 relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that

24 the state court adjudicated the claim on the merits in the absence of any indication or state-law

25 procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a

26 decision on the merits and there is no reasoned lower-court opinion, a federal court

27 independently reviews the record to determine whether habeas corpus relief is available under

28 § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the

4

1  record is not *de novo* review of the constitutional issue, but rather, the only method by which we

2  can determine whether a silent state court decision is objectively unreasonable." Himes v.

3  Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court

4  record and "must determine what arguments or theories . . . could have supported, the state

5  court's decision; and then it must ask whether it is possible fairminded jurists could disagree that

6  those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme]

7  Court." Richter, 562 U.S. at 102.

8                                              **III.**

9                                         **DISCUSSION**

10      **A.  Due Process Requirements of Prison Disciplinary Proceedings**

11          Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be

12  diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell,

13  418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution,

14  so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. When a

15  prison disciplinary proceeding may result in the loss of good time credits, due process requires

16  that the prisoner receive: (1) advance written notice of the charges at least twenty-four hours

17  before a disciplinary hearing; (2) an opportunity, when consistent with institutional safety and

18  correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a

19  written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary

20  action. Superintendent v. Hill, 472 U.S. 445, 454 (1984); Wolff, 418 U.S. at 563–67. Inmates are

21  entitled to an impartial decisionmaker in a disciplinary proceeding. Wolff, 418 U.S. at 570–71.

22  Additionally, due process requires that there be "some evidence" to support the disciplinary

23  decision to revoke good time credits. Hill, 472 U.S. at 454–55.

24      **B.  Video Evidence**

25          In his first claim for relief, Petitioner asserts that he was deprived of due process when he

26  was denied access to exculpatory video evidence. (ECF No. 1 at 21.) In his third claim for relief,

27  Petitioner asserts that he was deprived of due process when the hearing officer found Petitioner

28  guilty based on video evidence that was not played at the disciplinary hearing. (Id. at 24.) These

1  claims were raised in Petitioner's state habeas petition filed in the Kings County Superior Court,

2  which denied the claim in a reasoned decision. (ECF No. 8 at 17–20, 49–50.) These claims were

3  also raised in a habeas petition filed in the California Court of Appeal, Fifth Appellate District,

4  which summarily denied the petition, and in a habeas petition filed in the California Supreme

5  Court, which also summarily denied the petition. (Id. at 62–63, 95, 107–09, 154.) As federal

6  courts "look through" summary denials and review "the last related state-court decision that does

7  provide a relevant rationale," Wilson, 584 U.S. at 125, this Court will examine the decision of

8  the Kings County Superior Court.

9         In denying Petitioner's due process claims regarding video evidence, the Kings County

10 Superior Court stated:

11             Petitioner makes multiple complaints in his petition. In his first
              claim, Petitioner complains that he was deprived of his liberty
12            interest because he was denied exculpatory video evidence.
              Petitioner appears to complain that he was not shown the security
13            video or the body worn video camera footage of the incident.
              Petitioner has attempted to obtain the video but has been told that it
14            is unavailable or no longer retained. . . . Third, Petitioner appears
              to complain that he was found guilty of the RVR based on video
15            evidence that was never produced at the disciplinary hearing.

16            . . . .

17            Focusing on claims one and three, both these claims revolve
              around the body worn video and Audio/Video Surveillance System
18            ("AVSS") video that Petitioner claims is exculpatory and claims
              that he was not allowed to view at the disciplinary hearing.
19            Petitioner's claim is conclusory and does not explain how he was
              denied his procedural due process rights because the SHO, sitting
20            as the fact finder viewed the AVSS video in determining
              Petitioner's guilt. The procedural due process safeguards afforded
21            in a prison disciplinary hearing include: (1) "advance written
              notice of the disciplinary charges; (2) an opportunity, when
22            consistent with institutional safety and correctional goals, to call
              witnesses and present documentary evidence in his defense; and,
23            (3) a written statement by the factfinder of the evidence relied on
              and the reasons for the disciplinary action." (Superintendent v. Hill
24            (1985) 472 U.S. 445, 454.) These safeguards do not include
              requiring that the accused inmate be allowed to view the body
25            worn video or AVSS video. Rather, the safeguards only provide
              for a written statement by the factfinder of the evidence relied on
26            for the disciplinary action. Consequently, this claim fails.

27 (ECF No. 8 at 49, 51.)

28 ///

1          1.   Denial of Access to Video Evidence

2          Petitioner asserts that he was deprived of due process when he was denied access to

3    exculpatory video evidence. (ECF No. 1 at 21.) The Disciplinary Hearing Results report states in

4    the "INVESTIGATIVE EMPLOYEE" section: "EVIDENCE REQUESTE [*sic*]: VIDEO (none

5    available)." (ECF No. 8 at 30.) Thus, it appears that Petitioner requested, through his assigned

6    investigative employee, the video evidence, and the request was denied on the ground that there

7    was allegedly no video evidence available. However, the Disciplinary Hearing Results report

8    states in the "EVIDENCE" section that AVSS was available and the "audio/video evidence was

9    relied upon to determine the finding in this case." (Id. at 32.)

10         Respondent argues that "there was no video evidence depicting the act that constituted a

11   violation of prison rules—the waste of Sergeant Barrios' time during his investigation of

12   Thompson's patently false allegation," and thus, "it was not an unreasonable determination of

13   the facts to conclude that the hearing officer . . . properly denied a request for unavailable video

14   evidence." (ECF No. 8 at 7.) As an initial matter, the Court finds Respondent's interpretation of

15   Petitioner's claim to be illogical. As should be clear from the factual background of this case,

16   Petitioner was not requesting video of the waste of Sergeant Barrios' time during his

17   investigation. Rather, Petitioner was requesting video footage of the earlier interaction that

18   would show whether custody staff in fact reached through the food port or touched Petitioner, as

19   Petitioner claimed, or whether they did not and Petitioner was lying in a way that caused Barrios

20   undue work.

21         The Court has carefully considered whether the state court's determination that Petitioner

22   had no right to the video in question is "contrary to" clearly established Supreme Court

23   precedent in that it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a

24   question of law" as required by the AEDPA legal standards cited above. Williams, 529 U.S. at

25   413. Again, the Supreme Court has held that when a prison disciplinary proceeding may result in

26   the loss of good time credits, due process requires that the prisoner receive: (1) advance written

27   notice of the charges at least twenty-four hours before a disciplinary hearing; (2) an opportunity,

28   when consistent with institutional safety and correctional goals, to call witnesses and present

1   documentary evidence in his defense; and (3) a written statement by the fact-finder of the

2   evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 563–67. The

3   Supreme Court has not addressed a case with the specific situation presented here—where an

4   inmate is denied a video of the incident at issue in a disciplinary proceeding, despite that video

5   being used as evidence against him in the disciplinary proceeding. The question is whether the

6   Supreme Court's requirement that an inmate be able to "present documentary evidence in his

7   defense," Wolff, 418 U.S. at 566, clearly establishes an inmate's right to access evidence.

8          The Court has found cases in the Ninth Circuit and other courts holding that inmates have

9   such a right. Specifically, the Ninth Circuit has found that the Supreme Court's decision in Wolff

10  "made clear that a prisoner's right to present a defense must extend to the preparation of a

11  defense, including compiling evidence[.]" Melnik v. Dzurenda, 14 F.4th 981, 986 (9th Cir. 2021)

12  (citing Wolff, 418 U.S. at 566). See Melnik, 14 F.4th at 986 ("Many courts have held that for the

13  right articulated in Wolff to mean anything, a prisoner must also have the right to access

14  evidence that he might use in preparing or presenting his defense," and "if an inmate has a

15  circumscribed right to present documentary evidence, logic dictates that he must also have some

16  possible means for obtaining it." (internal quotation marks omitted) (quoting Smith v. Mass.

17  Dep't of Corr., 936 F.2d 1390, 1401 (1st Cir. 1991))). Thus, the Ninth Circuit has held that the

18  "right referenced in Wolff to 'present documentary evidence in' the prisoner's own defense must

19  generally include the ability to obtain that documentary evidence in the first place." Melnik, 14

20  F.4th at 986 (quoting Wolff, 418 U.S. at 566). The Ninth Circuit has held that the rights

21  articulated above were clearly established for purposes of qualified immunity in a § 1983 case.

22  Melnik, 14 F.4th at 984, 988–90.

23         Cases from other circuits have also held that inmates have a right to obtain exculpatory

24  evidence, including video surveillance evidence. See Lennear v. Wilson, 937 F.3d 257, 269 (4th

25  Cir. 2019) ("[A]n inmate's due process rights related to . . . evidence has at least two dimensions:

26  (A) the qualified right of access to such evidence and (B) the qualified right to compel official

27  review of such evidence."); id. at 270 ("[T]he procedural due process protections afforded to

28  inmates in disciplinary proceedings encompass a qualified right of access to video surveillance

1  evidence."); Howard v. U.S. Bureau of Prisons, 487 F.3d 808, 813–14 (10th Cir. 2007) (holding

2  that Federal Bureau of Prisons' refusal to produce and review a videotape violated habeas

3  petitioner's due process right to present documentary evidence in his own defense in prison

4  disciplinary proceeding); Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir. 1992) ("[T]his

5  court has held that an inmate is also entitled to disclosure of exculpatory evidence, unless that

6  disclosure would unduly threaten institutional concerns."); Young v. Kann, 926 F.2d 1396,

7  1400–02 (3rd Cir. 1991) ("By denying Young the opportunity to refute the charges against him

8  through the presentation of his own letter, confiscated by the authorities and then used to

9  discipline him, Kann violated the due process rights accorded Young under Wolff to 'present

10  documentary evidence' and 'marshal the facts in his defense.'"); Smith v. Mass. Dep't of Corr.,

11  936 F.2d 1390, 1401 (1st Cir. 1991); Meis v. Gunter, 906 F.2d 364, 367 (8th Cir. 1990) (Inmates

12  "have a right to reasonable access to information necessary to put on a defense, including prison

13  documents, if there are any[.]"). Cf. Francis v. Coughlin, 891 F.2d 43, 47 (2d Cir. 1989) ("[A]

14  prisoner is entitled to be . . . informed of the evidence against him . . . ." (quoting Nieves v.

15  Oswald, 477 F.2d 1109, 1113 (2d Cir. 1973)).

16      However, the question of whether the state court's decision was contrary to clearly

17  established federal law under 28 U.S.C. § 2254(d) differs from whether it was clearly established

18  by circuit precedent or for the purposes of qualified immunity. To be clearly established for

19  purposes of qualified immunity, "a legal principle must have a sufficiently clear foundation in

20  then-existing precedent. The rule must be settled law, which means it is dictated by controlling

21  authority or a robust consensus of cases of persuasive authority." District of Columbia v. Wesby,

22  583 U.S. 48, 63 (2018) (internal quotation marks and citations omitted). On the other hand,

23  "clearly established Federal law" under 28 U.S.C. § 2254(d)

24          refers to "the holdings, as opposed to the dicta, of [the Supreme]
           Court's decisions at the time of the relevant state-court decision."
25          Taylor, 529 U.S. at 412, 120 S.Ct. 1495. Federal law is "clearly
           established" if the Supreme Court has "squarely addresse[d]" a
26          claim and provided a "clear answer." Wright v. Van Patten, 552
           U.S. 120, 125–26, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008). "[I]f a
27          habeas court must extend a rationale before it can apply to the facts
           at hand, then by definition the rationale was not clearly established
28          at the time of the state-court decision." White v. Woodall, 572 U.S.

1      415, 426, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014) (quotation
       marks and citation omitted).

2

3    Grimes v. Phillips, 105 F.4th 1159, 1165 (9th Cir. 2024). "[I]t is not 'an unreasonable application

4    of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that

5    has not been squarely established by [the Supreme] Court." Knowles v. Mirzayance, 556 U.S.

6    111, 122 (2009).

7         The Court finds that the state court decision here was not contrary to, or an unreasonable

8    application of, clearly established federal law under 28 U.S.C. § 2254(d). The Supreme Court

9    has not squarely addressed a due process claim based on a failure to obtain exculpatory video

10   evidence in a prison disciplinary proceeding. Moreover, this Court has not found a Ninth Circuit

11   decision holding that the "constitutional right under the Due Process Clause of the Fourteenth

12   Amendment to be permitted to examine documentary evidence for use in the prison disciplinary

13   hearing," Melnik, 14 F.4th at 984, is clearly established for purposes of 28 U.S.C. § 2254(d).[3]

14   That said, the Court has found district court cases holding that there is no such clearly

15   established right. See Best v. Lake, No. 1:19-cv-00026-DAD-JLT, 2019 WL 3409868, at *4

16   (E.D. Cal. July 29, 2019) (finding "Petitioner does not have a due process right to have his staff

17   representative review camera footage" and recommending denial of habeas relief), report and

18   recommendation adopted, 2019 WL 5420208 (E.D. Cal. Oct. 23, 2019); Harrison v. Marshall,

19   No. CV 10-2300-GW RNB, 2010 WL 5422540, at *12 (C.D. Cal. July 28, 2010) (finding

20   "Petitioner did not have a clearly established federal due process right . . . to obtain 'potentially

21   exculpatory' evidence in the possession of the prison authorities in advance of the disciplinary

22   hearing" and recommending denial of habeas relief), report and recommendation adopted, 2010

23   WL 5452089 (C.D. Cal. Dec. 28, 2010).

24        Furthermore, a Fourth Circuit case has addressed whether such a right was clearly

25   established for purposes of AEDPA, and found that even though the Fourth Circuit has held a

26   _____

27   [3] "Although circuit caselaw is not governing law under AEDPA, we may look to circuit precedent in
     determining what law is clearly established. Moreover, as with any other precedent, we must follow our
     cases that have determined what law is clearly established." Byrd v. Lewis, 566 F.3d 855, 860 n.5 (9th

28   Cir. 2009) (citations omitted).

1   prisoner "has a qualified right to access and compel consideration of any video surveillance

2   evidence of the incident giving rise to his loss of good time credits," <u>Lennear</u>, 937 F.3d at 279,

3   that holding was not based on a specific Supreme Court holding but rather "extended the legal

4   principles announced in <u>Wolff</u> to a new legal context," <u>Tyler v. Hooks</u>, 945 F.3d 159, 168–69

5   (4th Cir. 2019) (brackets, internal quotation marks, and citations omitted). <u>See</u> <u>id.</u> at 168

6   (<u>Lennear</u> "made plain that we established a prisoner's right to compel review of video

7   surveillance evidence for the first time in this circuit, while recognizing that to date we have not

8   addressed whether the universe of documentary evidence subject to the due process protections

9   in <u>Wolff</u> encompasses surveillance evidence." (brackets, internal quotation marks, and citations

10  omitted)). Thus, the Fourth Circuit concluded that the state court's denial of the petitioner's

11  claim that he was denied due process when the disciplinary hearing officer did not review video

12  evidence did not unreasonably apply clearly established federal law because "under AEDPA, the

13  Supreme Court's holdings alone control our analysis and, to date, the Supreme Court has never

14  held that the due process rights announced in <u>Wolff</u> extend to video evidence." <u>Tyler</u>, 945 F.3d

15  at 169. <u>See</u> <u>id.</u> at 173 ("[W]e conclude that the district court correctly denied Tyler's § 2254

16  petition as it pertains to the DHO's decision not to review the video evidence during his

17  disciplinary hearing.").

18         Based on the foregoing, the state court's rejection of Petitioner's claim regarding denial

19  of access to video evidence was not contrary to, or an unreasonable application of, clearly

20  established federal law, nor was it based on an unreasonable determination of fact. The decision

21  was not "so lacking in justification that there was an error well understood and comprehended in

22  existing law beyond any possibility of fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. The

23  Court "cannot say that every fairminded jurist would agree that the state court was unreasonable

24  in denying relief." <u>Frye v. Broomfield</u>, 115 F.4th 1155, 1158 (9th Cir. 2024). "Section 2254(d)

25  reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal

26  justice systems,' not a substitute for ordinary error correction through appeal." <u>Richter</u>, 562 U.S.

27  at 102–03 (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in

28  judgment)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion

11

1  was unreasonable" under AEDPA. <u>Richter</u>, 562 U.S. at 102. Accordingly, the Court must defer

2  to the state court's decision, and Petitioner's first claim for relief should be denied.

3        2.  <u>Failure to Play Video Evidence During Hearing</u>

4        With respect to Petitioner's claim that the hearing officer found Petitioner guilty without

5  viewing the video evidence at the hearing, the Court notes that the hearing officer *considered* the

6  video evidence in making his determination even if it was viewed outside Petitioner's presence.

7  Such a procedure does not contravene <u>Wolff</u> and its progeny. Thus, the state court's rejection of

8  this claim was not contrary to, or an unreasonable application of, clearly established federal law,

9  nor was it based on an unreasonable determination of fact. The decision was not "so lacking in

10  justification that there was an error well understood and comprehended in existing law beyond

11  any possibility of fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. The Court "cannot say

12  that every fairminded jurist would agree that the state court was unreasonable in denying relief."

13  <u>Frye</u>, 115 F.4th at 1158. Accordingly, the Court must defer to the state court's decision, and

14  Petitioner's third claim for relief should be denied.

15      **C.  Denial of Witness**

16        In his second claim for relief, Petitioner asserts that he was deprived of due process when

17  he was denied the opportunity to question the reporting employee, Sergeant Barrios, at the

18  disciplinary hearing. (ECF No. 1 at 23.) Respondent argues that the state court reasonably found

19  that the hearing officer granted Petitioner's witness request but that Petitioner refused to ask any

20  questions. (ECF No. 8 at 7.)

21        This claim was raised in Petitioner's state habeas petition filed in the Kings County

22  Superior Court, which denied the claim in a reasoned decision. (ECF No. 8 at 17, 19, 49–51.)

23  The claim was also raised in a habeas petition filed in the California Court of Appeal, Fifth

24  Appellate District, which summarily denied the petition, and in a habeas petition filed in the

25  California Supreme Court, which also summarily denied the petition. (<u>Id.</u> at 62, 95, 107, 154.) As

26  federal courts "look through" summary denials and review "the last related state-court decision

27  that does provide a relevant rationale," <u>Wilson</u>, 584 U.S. at 125, this Court will examine the

28  decision of the Kings County Superior Court.

1      In denying Petitioner's witness claim, the Kings County Superior Court stated:

2

3

> In claim two, Petitioner complains that he wanted to call Officer
> Barrios as a witness at his disciplinary hearing but was denied
> from doing show by SHO R. Roque. A review of the Disciplinary
> Hearing Results Reports shows that Sergeant Barrios was
> requested as a witness at the hearing, and that request was granted
> by the SHO. According to the Disciplinary Hearing Results under
> the "WITNESSES" heading and the subheading "Questions
> Asked" of J. Barrios it says "During RVR adjudication, Subject
> became agitated and verbally aggressive, stating SGT Barrios
> could not write him up for making allegations. Subject did not ask
> any questions he would just yell out 'Barrios could not do that." It
> appears based on the Disciplinary Hearing Results Report, SGT
> Barrios was present during the disciplinary hearing and available
> to answers questions posed by Petitioner. Petitioner did not appear
> to exercise his right to ask questions. Petitioner does not explain
> this discrepancy in his petition and consequently Petitioner fails to
> establish a prima facie claim for relief as to this claim.

4

5

6

7

8

9

10

11    (ECF No. 8 at 51.)

12      "AEDPA . . . restricts the scope of the evidence that we can rely on in the normal course

13   of discharging our responsibilities under § 2254(d)(1)." Murray v. Schriro, 745 F.3d 984, 998

14   (9th Cir. 2014). "AEDPA's 'backward-looking language requires an examination of the state-

15   court decision at the time it was made. It [then logically] follows that the record under review is

16   limited to the record in existence at that same time, *i.e.*, the record before the state court.'" Id.

17   (alteration in original) (quoting Cullen v. Pinholster, 563 U.S. 170, 182 (2011)). Accordingly, the

18   Court will "consider the entire state-court record," McDaniels v. Kirkland, 813 F.3d 770, 780

19   (9th Cir. 2015), but not any additional allegations set forth in the instant federal habeas petition.

20      "A state court's decision is based on unreasonable determination of the facts under

21   § 2254(d)(2)[4] if the state court's findings are 'unsupported by sufficient evidence,' if the 'process

22   employed by the state court is defective,' or 'if no finding was made by the state court at all.'"

23

---

24  [4] Two provisions of the AEDPA, 28 U.S.C. § 2254(d)(2) and (e)(1), govern the review of state court
determinations of fact. The Court notes there is some confusion in Ninth Circuit cases as to how these

25  provisions interact, and the Supreme Court has not addressed the relationship between § 2254(d)(2) and
(e)(1). See Brumfield v. Cain, 576 U.S. 305, 322 (2015); Murray v. Schriro, 745 F.3d 984, 998–1001 (9th

26  Cir. 2014) (acknowledging the Ninth Circuit's two lines of cases and noting that any tensions between
various Ninth Circuit cases or between Ninth Circuit cases and limited statements by the Supreme Court

27  will have to be resolved by the Ninth Circuit en banc or by the Supreme Court). "However, a court need
not address the interaction between § 2254(d)(2) and (e)(1) when the petitioner's claims fail to satisfy

28  either provision." Atwood v. Ryan, 870 F.3d 1033, 1047 (9th Cir. 2017).

1    Hernandez v. Holland, 750 F.3d 843, 857 (9th Cir. 2014) (quoting Taylor v. Maddox, 366 F.3d

2    992, 999 (9th Cir. 2004)). "[U]nder § 2254(d)(2), a federal court 'may not second-guess' a state

3    court's factual findings unless 'the state court was not merely wrong, but actually unreasonable'

4    in light of the record before it." Atwood v. Ryan, 870 F.3d 1033, 1047 (9th Cir. 2017) (quoting

5    Taylor, 366 F.3d at 999).

6          According to the Disciplinary Hearing Results report, the request for Sergeant J. Barrios,

7    the reporting employee, was granted. (ECF No. 8 at 31.) Under the "WITNESSES" heading and

8    the subheading "Questions Asked" of J. Barrios, the disciplinary hearing report states: "During

9    RVR adjudication, Subject became agitated and verbally aggressive, stating SGT Barrios could

10   not write him up for making allegations. Subject did not ask any questions he would just yell out

11   'Barrios could not do that.'" (Id.) Based upon this Court's reading of the report, it is not

12   irrefutably clear that Sergeant Barrios was present at the disciplinary hearing as a witness. The

13   report states that the witness request was granted, but it does not explicitly state that Barrios was

14   present at the hearing or that Petitioner was yelling *at* Barrios. However, the Court is cognizant

15   that "under § 2254(d)(2), a federal court 'may not second-guess' a state court's factual findings

16   unless 'the state court was not merely wrong, but actually unreasonable' in light of the record

17   before it." Atwood, 870 F.3d at 1047 (quoting Taylor, 366 F.3d at 999). As noted by the superior

18   court, Petitioner did not explain the discrepancy between his allegations that he was denied the

19   opportunity to question Sergeant Barrios at the disciplinary hearing and what was written in the

20   disciplinary hearing report. (ECF No. 8 at 51.) Although Petitioner subsequently raised this claim

21   to the California Court of Appeal, Fifth Appellate District, and the California Supreme Court,

22   Petitioner did not address the deficiency identified by the superior court and did not further

23   elaborate on the discrepancy between his allegations and the written disciplinary decision.

24          Based on the foregoing, the superior court's determination that Petitioner was granted his

25   witness request but declined to ask questions was not an unreasonable determination of facts in

26   light of the record before it. The decision was not "so lacking in justification that there was an

27   error well understood and comprehended in existing law beyond any possibility of fairminded

28   disagreement." Richter, 562 U.S. at 103. The Court "cannot say that every fairminded jurist

14

1  would agree that the state court was unreasonable in denying relief." Frye, 115 F.4th at 1158.

2  Accordingly, the Court must defer to the state court's decision, and the second claim should be

3  denied.

4          **D.  Sufficiency of the Evidence**

5          In his fourth claim for relief, Petitioner asserts that the state court erred in finding that

6  some evidence supported the guilty finding because said evidence was not reliable. (ECF No. 1

7  at 25.) Respondent argues that there is some evidence supporting the guilty finding and the state

8  court's decision was not contrary to clearly established federal law or an objectively

9  unreasonable application of the fact. (ECF No. 8 at 8.)

10          This claim was raised in Petitioner's state habeas petition filed in the Kings County

11  Superior Court, which denied the claim in a reasoned decision. (ECF No. 8 at 17, 20–21, 49, 51.)

12  The claim was also raised in a habeas petition filed in the California Court of Appeal, Fifth

13  Appellate District, which summarily denied the petition, and in a habeas petition filed in the

14  California Supreme Court, which also summarily denied the petition. (Id. at 62–64, 95, 108,

15  110–11, 154.) As federal courts "look through" summary denials and review "the last related

16  state-court decision that does provide a relevant rationale," Wilson, 584 U.S. at 125, this Court

17  will examine the decision of the Kings County Superior Court.

18          In denying Petitioner's sufficiency of the evidence claim, the Kings County Superior

19  Court stated:

20          In Petitioner's fourth claim, he asserts that there is no "some
            evidence" to support the guilt finding because SHO R. Rogue
21          relied upon the mere allegations and recommendations of Sergeant
            Barrios. Petitioner claims that "In order for 'some evidence' to be
22          applied in standard of review, it has to be reliable and indisputable
            to sustain prison disciplinary adjudication." Petitioner's recitation
23          of the "some evidence" standard is incorrect. The "some evidence"
            standard only requires the court to determine whether there is *any*
24          evidence in the record that could support the conclusion reached by
            the Senior Hearing Officer.
25
            Applying the highly deferential "some evidence" standard to the
26          present facts, there is some evidence to support a guilty finding
            that Petitioner violated Cal. Code Regs., tit. 15, § 3005(a),
27          Delaying a Peace Officer in the Performance of Duties by making
            a false PREA allegation. SHO R. Rogue reviewed the AVSS video
28          of the encounter and found "Upon reviewing the available AVSS

                                      15

1
2
> footage, at no point is Officer Rocha observed reaching through the food port, therefore [Petitioner's] allegations are false."

3
4
5
> After reviewing the petition and the attached exhibits, this court is satisfied that based on the evidence before the court, there was "some evidence" sufficient to support the finding of guilt in the disciplinary hearing and that Petitioner's due process rights have not been violated.

6
(ECF No. 8 at 51.)

7
8
9
10
11
12
13
14
15
16
Due process requires that there be "some evidence" to support the disciplinary decision to revoke good time credits. Hill, 472 U.S. at 454–55. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion . . . ." Id. at 455–56. "The Hill standard is minimally stringent." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). Although "there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions," id., the state court was not objectively unreasonable in rejecting Petitioner's contention that to satisfy the "some evidence" requirement, evidence "has to be reliable and *indisputable*," (ECF No. 8 at 51 (emphasis added)).

17
18
19
20
21
22
23
24
Based on the foregoing, the state court's rejection of Petitioner's sufficiency of the evidence claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Richter, 562 U.S. at 103. The Court "cannot say that every fairminded jurist would agree that the state court was unreasonable in denying relief." Frye, 115 F.4th at 1158. Accordingly, the Court must defer to the state court's decision, and Petitioner's fourth claim for relief should be denied.

25
### III.

26
### RECOMMENDATION

27
28
Based on the foregoing, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

1       This Findings and Recommendation is submitted to the assigned United States District

2   Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

3   Rules of Practice for the United States District Court, Eastern District of California. Within

4   **THIRTY (30) days** after service of the Findings and Recommendation, any party may file

5   written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and

6   serve a copy on all parties. Such a document should be captioned "Objections to Magistrate

7   Judge's Findings and Recommendation." Replies to the objections shall be served and filed

8   within fourteen (14) days after service of the objections. The assigned United States District

9   Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).

10  The parties are advised that failure to file objections within the specified time may waive the

11  right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir.

12  2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

13

14  IT IS SO ORDERED.

15     Dated:   **January 6, 2025**                    /s/ Erica P. Grosjean

16                                    UNITED STATES MAGISTRATE JUDGE